IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSE BENCOMO-CASTILLO, ) | |
| ) | |
| Movant, ) | Case No. 3:11-00621 |
| ) | Chief Judge Haynes |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

Movant, Jose Bencomo-Castillo, filed this pro se action under 28 U.S.C. § 2255 seeking to set aside his convictions for conspiracy to kidnap, kidnapping, kidnapping a minor, and brandishing firearm during a crime of violence for which he received an effective sentence of 324 months. (United States v. Castillo, 3:04cr149, Docket Entry No. 226 Judgment at 1, 2). After review of the pro se motion, the Court appointed the Federal Public Defender who filed an amended motion with two claims: (1) that his trial counsel failed to advise Movant adequately on acceptance of an alleged government plea offer; and (2) that trial counsel failed to address Movant's complaints during trial about the counts.

In an earlier proceeding, the Court denied without prejudice the Respondent's motion to dismiss this action as untimely. The Court set an evidentiary hearing on Movant's request for equitable tolling. Movant argues that his claims about his trial counsel are interrelated with his request for equitable tolling. The Respondent renews its motion to dismiss this action as time barred. (Docket Entry No. 43).

## A. Findings of Fact

The facts underlying Movant's convictions were stated by the Sixth Circuit in Movant's joint appeal with his co-defendants:

> In this consolidated appeal, the defendants, Hector Saul Mendez, Jose Alvarado Borrego, Jose Bencomo-Castillo, Jose Bejarano Hernandez, and Juan Victor Perez, challenge their convictions for conspiring to kidnap three persons, in violation of 18 U.S.C. § 1201(c); kidnaping three persons, including a minor, in violation of 18 U.S.C. §§ 1201(a)(1) and 1201(g); and brandishing or being principals to the brandishing of firearms during the kidnaping, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii). We will affirm.
> 
> I.
> 
> In 2004, Hernandez and Juan Chavez, a local drug dealer, engaged in a series of drug transactions, whereby Hernandez would arrange a delivery of marijuana and cocaine to Chavez through Hernandez's Mexican contacts. After two major deliveries, Chavez defaulted on payment and owed the Mexican dealers over one million dollars. Under pressure from the Mexican suppliers to collect from Chavez, Hernandez conceived a scheme to kidnap Chavez's mother, Rosa Chavez, hold her captive, and then demand that Juan Chavez pay a ransom for her release. Hernandez recruited the other defendants to help him execute the plan.
> 
> On August 7, 2004, the five defendants traveled from Dalton, Georgia, to Rosa Chavez's home in Nashville, Tennessee. Around midnight, Borrego forced open Mrs. Chavez's front door and went inside, followed by Bencomo-Castillo, Mendez, and Perez openly displaying firearms. The defendants abducted the three occupants of the home, Rosa Chavez, Eloy Florez (Rosa's boyfriend), and Estephany Marquez (Juan Chavez's fourteen year old niece), at gunpoint, eventually driving them to a Super 8 Motel in Dalton, Georgia, and holding them as hostages.
> 
> On August 9, 2004, the police arrested all five kidnapers before any ransom was paid.
> 
> Following a joint trial at which Hernandez was the only defendant to testify, the jury found each defendant guilty on all counts. The district court sentenced each defendant to serve between 324-408 months' imprisonment.

United States v. Mendez, 303 Fed. Appx. 323, 324 (6th Cir. 2008).

As to equitable tolling, Movant cites his "little understanding of the charges against him (and continues to have little understanding)" and that ["h]e had no criminal history and no understanding of the American legal system". (Docket Entry No. 44, Movant's Brief at 5 ). Movant states that he has "a grade-school education, no ability to read or write at the time of his charges, and no ability to speak English." Id. at 5. According to Movant, he "effectively could not interact with the court system without the help of English-speaking individuals who could write on behalf of a functionally illiterate Spanish speaker. In order to find such an individual, however, Mr. Bencomo-Castillo first had to find someone he could trust, which is difficult in prison. He next had to pay that individual, which was equally difficult." Id. at 6.

Movant cites his three institutional transfers with his first two years in an Atlanta prison and thereafter the next two or three years in Ray Brook, New York, before his curent facility in Pollock, Louisiana. In Ray Brook, Movant spent eight months in "the hole" for a disciplinary infraction, without access to assistance with legal matters and spent more than a month in the hospital without legal assistance. Id. at 6-7.

As to Movant's inability to understand English and secure language assistance, on October 16, 2006 and March 4, 2007, Movant signed a letter in English to Barry Tidwell, his trial counsel requesting his entire trial record, Tidwell's files and the status of his appeal. (Movant's Joint Exhibit 1). In a March 14, 2007 letter, Movant cited his review of the Court's docket sheet and requested a copy of Tidwell's brief that was due March 14, 2007. Id. In a March 28, 2007 letter, Movant cited portions of his appellant brief and the alleged errors concerning "Bruton" issues as well as impeachment issues, but never asserted that he did not understand the evidence against him or that he wanted to testify at his trial or that he did not understand the interpreter. Id. In a July 12,

3

2007, letter from Atlanta, Movant refers to a family member who contacted Tidwell at Movant's request and cites Strickland v. Washington, 466 U.S. 668 (1984) as defining Tidwell's duty to him. Id. On October 19, 2007, Movant filed a mandamus petition, seeking to compel Tidwell to produce the entire trial and court records as well as appellate filings on his behalf.

As to his asserted language barrier, since 1990, Defendant has lived in Nevada, and worked intermittently in Colorado, Arizona and Georgia in various construction and agricultural jobs. Movant "said that, despite his limited education, he knows how to read and write Spanish. The defendant's common law wife stated he writes her weekly from the Robertson County (Tennessee) Jail where he is currently housed. [Movant] does not speak English and an interpreter was used during the presentence interview." Presentence Investigation Report at 13, United States v. Bencomo-Castillo, No. 3:04-00149-04 (M.D.Tenn. May 11, 2006), Docket Entry No. 243..

As to his lack of a criminal history, Movant's presentence report reflects his prior experience with the American justice system when he arrested for driving without a drivers license, giving false information to police officers in Varnell, Georgia, but failed to appear for his court appearance on those charges. Id. at 11.

On December 17, 2008, the Sixth Circuit issued its opinion and Movant's judgment became final on March 17, 2009 that is 90 days after the deadline to file his petition for the writ of certiorari in the Supreme Court. On November 16, 2009, Movant requested the Sixth Circuit Court to provide him with copies of briefs. (Docket Entry No. 1-4 at 19). The Sixth Circuit Clerk responded on December 1, 2009 with an explanation of the copying cost. Id. at 18. On October 20, 2010, Movant wrote the Sixth Circuit Clerk about the status of his appeal. (Docket Entry No. 1-1). On October 27, 2010, Movant wrote Tidwell again requesting his trial and court records and stated

that he had not been informed about his appeal. (Docket Entry No. 1-2) In an October 27, 2010 letter, Movant wrote the Clerk of this Court for a copy of the Local Rules. (Docket Entry No. 1-4 at 17). Movant filed his pro se petition in this action on June 27, 2011.

According to Tidwell, since his representation of Movant, he has lost his files due to the Nashville flood, but in accordance with his standard trial practice, prior to trial, Tidwell and Movant met multiple times with an interpreter to discuss and review the Government's proof, including reports and the discovery. Tidwell told Movant the result he expected at trial and how they would respond. In Tidwell's view, the government "had a very strong case" and Tidwell so told Movant shortly after Movant's initial appearance or detention. As reflected in a letter to the file, dated August 11, 2004, to secure plea agreement, Tidwell outlined a potential proffer to Government counsel to assess whether the Government deemed the information truthful and helpful.

Movant had a Spanish interpreter for his proffer with government counsel. Through an interpreter, Calstillo described his version of the kidnapping, but denied brandishing a firearm. The trial proof was that Movant had and brandished a weapon during the kidnaping. Movant told the Government the location of the firearm used during the kidnapping. Tidwell explored with Movant a guilty plea in lieu of trial, given the mandatory minimum sentences for his offenses. Tidwell did not recall any specific term of years offered by the Government counsel during plea agreement discussions. Movant, however, would not cooperate nor agree to testify at trial.

At trial, Tidwell testified that Movant never expressed any difficulty with the interpreter. Tidwell kept Movant apprised of the progress of his appeal. Although his correspondence is lost due to the Nashville flood, Tidwell acknowledged Movant's correspondence and stated that his practice was and is to respond to such letters.

## B. Conclusions of Law

"The Court should consider [the] statute of limitations as a threshold matter." United States v. Jackson, 205 F. Supp.2d 876, 879 (W.D. Tenn. 2002) (citation omitted). Under Section 2255, "[a] 1-year period of limitation shall apply to [a] motion under this section." 28 U.S.C. § 2255(f).

> The limitation period shall run from the latest of--(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Here, on December 17, 2008, the Sixth Circuit issued its opinion on Movant's direct appeal and Movant's judgment became final on March 17, 2009 after the expiration of 90 days to file his petition for the writ of certiorari in the Supreme Court. Movant filed his pro se petition in this action on June 27, 2011. Thus, the Court concludes that Movant's Section 2255 motion is untimely. Moreover, two of Movant's claims were first presented in his amended petition that was filed on June 11, 2012. (Docket Entry No. 25, Amended Motion). The pendency of a federal habeas action does not toll the limitation period for filing of a federal habeas claim. Duncan v. Walker, 533 U.S. 167, 181-82 (2001). Under certain conditions, the relation back doctrine under Fed. R. Civ. P. 15(c)(2) can apply in a federal habeas action, but only to the extent that its application does not conflict with the AEDPA limitation period and the challenged claim is tied to the facts alleged in the original petition. Mayle v. Felix, 545 U.S. 644, 649 (2005). The Court concludes that Movant's claim in his amended motion to vacate is time barred.

Equitable tolling is invoked where the movant pursued his rights diligently and an extraordinary circumstance barred the filing of the habeas action. Holland v. Florida, 560 U.S. 631, 649 (2010). Equitable tolling is a judicial doctrine that extends to federal habeas actions. Souter v. Jones, 395 F.3d 577, 599-600 (6th Cir. 2005). Yet, the tolling doctrine is invoked only in "rare" and "exceptional circumstances." Id. at 600 As the Sixth Circuit noted,

> Equitable tolling allows courts to review time-barred *habeas* petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" Robinson v. Easterling, 424 Fed.Appx. 439, 442 (6th Cir. 2011) (quoting Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010)). Both ineffective assistance of counsel and "a substantial, involuntary delay in learning about the status of their appeals" may constitute extraordinary circumstances sufficient to warrant relief. See id. Despite the presence of such circumstances, the statute of limitations will only be tolled if the circumstances were both beyond the control of the litigant and unavoidable with reasonable diligence. Id. Thus, to demonstrate that he is entitled to equitable tolling, a *habeas* Movant must establish: (1) that he has diligently pursued his rights; and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 130 S.Ct. 2549, 2562 (2010) (internal quotation marks omitted); see also Hall v. Warden, 662 F.3d 745, 749 (6th Cir. 2011). Equitable tolling is granted sparingly and is evaluated on a case-by-case basis, with the Movant retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." Ata v. Scutt, 662 F.3d 736, 741 (6th Cir. 2011).

Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 462 (6th Cir. 2012). "This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." Norman v. Warden, London Corr. Inst., No. 1:10-CV-866, 2011 WL 6986790, at *3 (S.D. Ohio Nov. 30, 2011) (Report and Recommendation adopted by Norman v. Warden, London Corr. Inst., No. 1:10-CV-866, 2012 WL 84319 (S.D. Ohio Jan. 11, 2012)).

Movant asserts three grounds for equitable tolling: (1) his lack of understanding of the English language; (2) his movement between institutions and lack of access and understanding of the legal system; and (3) his due diligence in pursuing his rights on appeal and post conviction. As to the first two grounds, Movant's multiple letters, commencing in 2007 through 2010 to his counsel

and the Courts asserting his legal rights, reveal that neither language nor institutional transfers nor lack of access to legal assistance justify equitable tolling. Those claims lack merit. Movant's pro se petition with its extensive citations to equitable tolling and the relevant legal authorities for his claims validates that finding. Movant's use of his family members also reflects his meaningful option to assert his interests.

Yet, these same facts reflect a documentary record of Movant asserting his rights to preserve his post conviction remedies. The Court credits Tidwell's testimony that he responded to Movant's letters. In an abundance of caution the Court considers Movant's claims.

As to the first claim that his counsel did not disclose or discuss a plea offer, Tidwell's testimony, the proffer letters, the proffer conference and the discovery of the weapon used in the kidnapping and related offenses as a result of the proffer conference lead the Court to conclude that Tidwell fully explored a plea option for Movant, but Movant declined to commit to testify at trial. Moreover, there is not any credible proof that the Government offered a plea agreement with terms for an 18 year sentence. Tidwell, who led the plea agreement discussions, testified that there was not any such offer. There is not any proof from any agent or government counsel that a detailed offer was made.

Based upon the same evidence, the Court concludes that Tidwell would have discussed Movant's right to testify at trial on his own behalf or as a cooperating witness for the Government. This same proof convinces the Court that, if the Court interpreter were deficient in some respect, Movant would have expressed himself to Tidwell or would have secured a family member to do so for him.

As to Movant's lack of understanding of the legal theory of aider and abettor, Movant's

amended motion makes clear that:

> At the trial of all five participants, Bencomo-Castillo essentially had no defense. The government put on the three kidnapping victims, among other witnesses. All three witnesses testified that Bencomo-Castillo participated in the kidnapping and carried a weapon during the kidnapping, effectively establishing proof of the elements of the indicted crimes.
>
> Trial counsel offered no evidence in Bencomo-Castillo's defense. The only defense offered was through cross-examination of the prosecution's witnesses. Trial counsel was able to establish that Bencomo-Castillo did not act in an unusually threatening manner (in contrast to Anaconda, for example, who threatened to rape the 13-year-old Estephany), and instead appeared to do what he was ordered to do by others. Trial counsel even elicited the fact that Bencomo-Castillo offered small acts of kindness like bringing coffee to Ms. Marquez. This evidence, of course, was incapable of negating any of the elements of the crime.

(Docket Entry No. 25, Amended Petition at 5). With this proof, Movant was a principal participant and the theory of aider and abettor was unnecessary to to establish his guilt. Assuming Tidwell did not explain this theory to Movant, there is not any prejudice shown to satisfy Strickland.

For these collective reasons, the Court concludes that Movant's claims lack merit and thus, his motion to vacate and set aside his sentence should be denied.

An appropriate Order is filed herewith.

Entered this the _8_ day of September, 2014.

William J. Haynes, Jr.
Chief United States District Judge